**Hollis A. JACKSON, Appellant,**

v.

**The STATE of Oklahoma,
Appellee.**

**No. M–76–313.**

Court of Criminal Appeals of Oklahoma.

Aug. 25, 1976.

**40**

John H. Scaggs, Walters, for appellant. Appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark El-kouri, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Hollis A. Jackson, appellant, hereinafter referred to as the defendant, was charged, tried and convicted in the District Court, Cotton County, Oklahoma, Case No. CRM–75–49, for the crime of Driving Under the Influence of Intoxicating Liquor in violation of 47 O.S.1971, § 11–902. The jury assessed punishment at the maximum of one (1) year in the county jail and a Five Hundred Dollar ($500.00) fine. From this judgment and sentence the defendant has filed this timely appeal.

The evidence adduced at the trial is as follows: The complaining witness, Trooper E. D. Ruggs of the Oklahoma Highway Patrol, testified that on March 16, 1975, at approximately 9:00 p. m., he was patrolling State Highway 5 approximately 2½ miles west of Walters when he observed a 1962 Chevrolet pickup truck traveling east at a very slow rate of speed. Ruggs made a U–turn and continued observing the truck, which was being followed and passed by three other vehicles. The truck crossed the yellow center line once and ran off onto the shoulder of the highway two or three times, "a gradual swerve off of the road, but it was abruptly jerked back on the roadway;" that during the approximately 1½ miles Ruggs followed the truck before pulling it over that its speed varied considerably, "it was as low as ten, twelve miles per hour and then it would accelerate up to about twenty miles an hour, and then decelerate back down to a slower speed."

After stopping the truck for crossing the center line, Ruggs asked the defendant for a driver's license. Several things about the defendant led Ruggs to conclude the defendant was in violation of the statute:

"Q. Did you notice anything unusual about Mr. Jackson when you first observed him?

"A. Yes, sir, I did.

"Q. What was that?

"A. The strong odor of an alcoholic beverage.

"Q. What else did you notice about defendant?

"A. That his finger dexterity was poor while he was looking for his license in handling papers. Also that his walk was slow and it was unsteady.

"Q. What about his speech?

"A. It was somewhat slurred.

"Q. Did you have a hard time understanding him when he talked."

"A. I don't remember whether I had an extreme difficulty or not."

Ruggs then placed the defendant under arrest, advised him of his Constitutional rights and requested the defendant to take a chemical test for alcohol. The defendant submitted to a blood test. State's Exhibit No. 1 showed that the Oklahoma State Bureau of Investigation lab determined that the defendant's blood registered 0.26 per cent alcohol content.

Under cross-examination, Ruggs said it would take more than two cans of beer to reach a 0.26 per cent blood alcohol concentration, that it would require "(a six-pack)

or more" to reach the level in the defendant's blood.

The defendant, who was 62-years-old at the time, testified that he drank two cans of beer in a tavern during a period of approximately one hour. He said alcoholic beverages do not affect him in any unusual way and that it does not affect him any more readily than other persons. The defendant said he has a nervous condition as the result of a work related injury:

"Q. . . . [H]ow does that accident affect you now, sir?

"A. Oh, well, I don't really know. I just makes me nervous at times, and I have a hurting through my back and shoulders lots of times.

"Q. Sir, could you state whether or not you have any difficulty with your muscle control because of this injury?

"A. Well, I would say experience a little bit, yeah.

"Q. And did I understand you to testify you get nervous easy because of these injuries?

"A. Yes.

"Q. What do you do when you get nervous?

"A. Well, I just try to wear it off.

"Q. How do you act?

"A. Oh, I don't know, just nervous is all I can say."

The defendant also admitted pleading guilty to a previous charge of driving under the influence approximately three years earlier when his blood alcoholic content was measured at 0.27 percent (27/100%).

The State in rebuttal presented the testimony of Undersheriff J. T. Bielby concerning the previous arrest. Under cross-examination, Bielby testified that the defendant:

" . . . [H]is speech was slurred, and when he tried to walk he was staggering, holding to the side of the car, and we had to hold him and sit him in the police car. He couldn't walk."

Upon the State and defense resting, the trial judge and counsel retired to chambers to prepare instructions for the jury. The judge submitted the instructions to counsel for their opinions. The State had no objections. The defense objected to the lack of an instruction on the lesser included offense of driving while impaired, and the lack of provision in the form of the verdict for the lesser included offense, requesting an instruction on the lesser included offense and a new verdict form. The trial court overruled the objections and denied the requests which were not made in writing by counsel for the defense.

The defendant's counsel raises several assignments of error on this appeal, but argues most strongly for reversal on grounds that the trial court committed fundamental error in denying his request for a jury instruction on the lesser included offense. We agree and reverse for a new trial.

In support of his assignment, counsel for the defendant cites several Oklahoma statutes: 22 O.S.1971, § 916; 47 O.S.1971, § 11–902; 47 O.S.Supp.1975, § 761, and 47 O.S.1971, § 756. 22 O.S.1971, § 916 states:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

The information in the instant case charged the defendant with driving while under the influence of intoxicating liquor pursuant to 47 O.S.1971, § 11–902 included in pertinent part below:

"(a) It is unlawful and punishable as provided in paragraph (c) of this section for any person who is under the influence of intoxicating liquor to drive, operate, or be in actual physical control of any motor vehicle within this state.

\*　　\*　　\*　　\*　　\*　　\*

"(c) Every person who is convicted of a violation of this section shall be deemed guilty of a misdemeanor for the first offense and upon conviction thereof shall

be punished by imprisonment in a jail accredited or approved by the Commissioner of Charities and Corrections for a period of time not less than ten (10) days nor more than one (1) year, and a fine of not more than Five Hundred Dollars (500.00). . . . "

The offense of driving while ability is impaired by consumption of alcohol is set forth in 47 O.S.Supp.1975, § 761 in pertinent part as follows:

"(a) Any person who operates a motor vehicle while his ability to operate such motor vehicle is impaired by the consumption of alcohol shall be subject, for a first offense, to a fine of not less than One Hundred Dollars ($100.00) nor more than Three Hundred Dollars ($300.00)."

The presumptions of evidentiary material as to driving under the influence of alcohol or while ability is impaired is set forth in 47 O.S.Supp.1972, § 756, in pertinent part as follows:

"Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving . . . a motor vehicle while under the influence of alcohol or intoxicating liquor, evidence of the amount of alcohol in the person's blood as shown by a chemical analysis of his blood or breath is admissible . . .

\* \* \* \* \* \*

"(b) evidence that there was more than five hundredths (5/100) of one percent (1%) by weight of alcohol in the person's blood is relevant evidence of operating a motor vehicle while his ability to operate such motor vehicle is impaired by the consumption of alcohol or intoxicating liquor; however, no person shall be convicted of the offense of operating a motor vehicle while his ability to operate such vehicle is impaired by consumption of alcohol or intoxicating liquor solely because there was more than five-hundredths (5/100) of one percent (1%) by weight of alcohol in the person's blood

in the absence of additional evidence that such person's driving was affected by said consumption of alcohol to the extent that the public health and safety was threatened or that said person had violated a state statute or local ordinance in the operation of a motor vehicle;

(c) evidence that there was ten-hundredths (10/100) of one percent (1%) or more by weight of alcohol in his blood shall be admitted as prima facie evidence that the person was under the influence of alcohol or intoxicating liquor;

(d) percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood."

As this Court said in *Armstrong v. State*, Okl.Cr., 300 P.2d 766, 769 (1956):

"We conclude that the results of the drunkometer test, standing alone, were not conclusive of the intoxication or non-intoxication of the defendant, but such results of the drunkometer test might be received in evidence along with other tests or observations for the consideration of the jury as bearing upon the question of alcohol influence, and the jury would give the various kinds of evidence such weight as it might see fit from all the facts submitted for consideration, in reaching its ultimate conclusion."

In the instant case, the defendant did not dispute that he had been drinking an alcoholic beverage. He raised as a defense that the alcohol he consumed had merely impaired his ability to drive, not intoxicated him. There is no doubt that driving while ability is impaired is a lesser included offense under driving under the influence of intoxicating liquor because 47 O.S.1972, § 756 defines the evidentiary weight to be given various blood content levels. A lesser amount of blood alcohol concentration than 0.10 percent (10/100%) and more than 0.05 percent (5/100%) is relevant evidence as to driving while impaired. Whereas evidence that there was 0.10 percent (1/100%) or more by weight

of alcohol in the blood is prima facie evidence that the person was under the influence of alcohol.

Just as the State must prove simple assault and battery in order to prove assault with intent to do bodily harm, *Gann v. State*, Okl.Cr., 397 P.2d 686, 690 (1964), it must necessarily establish facts that prove *the defendant was driving while impaired in order to prove driving under the influence.*

As this Court said in *Gann v. State*, supra, citing *Finley v. State*, 84 Okl.Cr. 309, 181 P.2d 849 (1947):

" 'A party is entitled to have the jury instructed on the law governing the issues according to his theory, providing such theory is tenable as a matter of law, *or finds possible support in evidence.*' " [Emphasis added].

In the instant case, there was considerable testimony as to the defendant's prior arrest and guilty plea to a similar charge. This testimony by the defendant and the officer who arrested him on the prior charge showed how the defendant had acted when under the influence of 0.27 percent alcohol in the blood. It was more extreme than how the defendant acted in the incident upon which the instant case stems. While this Court cannot say that the defendant was or was not intoxicated from the facts, neither can the law. The testimony and evidence in the instant case are sufficient to overcome the presumption, raised by the blood test results, that the defendant was intoxicated. The issue is then one of fact for the jury to decide.

The defendant by the evidence as a defense contends that he is not guilty of the crime charged because he was committing a crime that is a lesser included offense. As this Court has stated many times:

"[A] defendant is entitled to an instruction *covering his theory of defense, even though under the facts it may appear ridiculous,* but even under such conditions the instructions must correctly state the law, and if such an instruction cannot be

prepared on defendant's theory within the provisions of the law, then the trial court is not required to so instruct. . . ." [Emphasis added]

*Bell v. State*, Okl.Cr., 381 P.2d 167, 176 (1963). See also *Scott v. State*, Okl.Cr., 448 P.2d 272, 280 [Bussey, J., dissenting] (1968); *Gann v. State*, supra, at 690.

Finally, counsel argues that this instruction on the lesser included offense is a substantial or fundamental right of the defendant to which he was entitled even without making a written request. As Judge Bliss, speaking for this Court, said in *Dixon v. State*, Okl.Cr., 545 P.2d 1262, 1264 (1976):

"However, the record reveals that the trial court failed to instruct the jury concerning the lesser included offense of assault and battery. *The evidence presented by the State requires such an instruction whether requested or not.* In *Easter v. State*, 74 Okl.Cr. 114, 123 P.2d 691, this Court, citing *Lumpkin v. State*, 5 Okl.Cr. 488, 115 P. 478, held as follows:

'That where this court is of the opinion, in the light of the entire record and the instructions given, that the court has failed to instruct the jury upon some material question of law and where accused has been deprived of a substantial right, the case will be reversed.'

In the instant case it is our opinion that the defendant was deprived of a substantial right by the failure of the trial court to submit an instruction on the lesser included crime. The trial court's failure constitutes fundamental error and the judgment and sentence appealed from must be and the same is hereby reversed and remanded for new trial under proper instructions." [Emphasis added].

Since the holding in *Dixon v. State*, supra, correctly states the law in Oklahoma, and for the reasons cited above, the judgment and sentence is hereby reversed and the cause remanded for new trial.

*REVERSED AND REMANDED.*

BLISS, J., concurs.

BUSSEY J., specially concurs.

BUSSEY, Judge (specially concurring):

I concur with the decision in the instant case, for there was ample evidence offered on behalf of defendant to justify the giving of the requested instruction on the lesser included offense of Driving While Impaired. Such was not the situation in *Scott v. State*, supra, where the trial court correctly instructed on every issue presented within the ambit of the pleadings and the proof and such instructions covered all of the theories of defense that were tenable as a matter of law.